UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
IN RE: PRESTIGE BRANDS HOLDINGS, INC.       05 Civ. 6924 (CLB)
      SECURITIES LITIGATION

                                        *Memorandum and Order*
-----------------------------------------------------------x
Brieant, J.

       Before the Court for decision is Plaintiffs' motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. (Doc. 91).

       The motion before this Court is brought by Lead Plaintiff Teamsters Affiliates Pension Plan ("TAPP") and Plaintiffs the City of Tallahassee Pension Plan ("Tallahassee") and Charter Township of Clinton Police and Fire Retirements System ("Charter"), (collectively with Tapp and Tallahassee, the "Plaintiffs" or "Proposed Class Representatives").  They move to have this consolidated class action certified as a class action on behalf of "all persons who purchased Prestige Brand Holdings, Inc. securities pursuant and/or traceable to the Company's initial public offering on or about February 9, 2005 (the "IPO") through November 15, 2005."  See Proposed Order, 1.  In addition to moving for class certification, Plaintiffs seek an Order certifying themselves as class representatives and their counsel as class counsel. Defendants filed a joint opposition to the motion for certification on April 18, 2007. (Doc. 106).

*Facts/Background*

       Plaintiffs brought this securities class action suit on behalf of purchasers of stock of Prestige Brands Holdings ("Prestige" or the "Company"), seeking remedies under the Securities Act of 1933 ("Securities Act") and the Securities Exchange Act of 1934 ("Exchange Act"). The

Complaint alleges that Defendants raised more than $515.2 million in an IPO pursuant to a defective Registration statement and Prospectus, which Plaintiffs claim contained materially false and misleading statements.

Defendants are the issuer, Prestige Brands Holdings, Inc., and its principals Mr. Peter C. Mann, President, Chief Executive Officer and Director of the issuer; Mr. Peter J. Anderson, Chief Financial Officer and Director; David A. Donnini, Outside Director, and Vincent J. Hemmer, Outside Director (sometimes referred to collectively as the "Prestige Defendants"); Defendants Merrill Lynch Pierce, Fenner and Smith, Inc., Goldman, Sachs and Company, and J.P. Morgan Securities, Inc., (collectively the "Underwriter Defendants"), and GTCR Golder Rauner II, LLC, a major investor in the stock of Prestige which, at relevant times, provided financial and management consulting services to Prestige.

The Supplemental Amended Complaint alleges that the Prospectus issued in connection with the IPO, filed on February 9, 2005, was materially false and misleading because it included financial statements not prepared in accordance with Generally Accepted Accounting Principles (GAAP).  The Supplemental Amended Complaint alleges that the Prospectus materially overstated the company's operating results and financial condition for the fiscal years ended March 31, 2003 and 2004 and the nine months ended December 31, 2004.  It is alleged that subsequently on July 27, 2005, Prestige announced material declines in sales for each of its business segments.  This announcement allegedly led to a 40% one-day decline of the Company's stock price the next day. Then, on November 15, 2005, the Supplemental Amended

Complaint alleges that "Prestige issued a press release announcing that it was restating its financial statements in order to correct more than three years of revenue and earnings misstatements, which resulted in a cumulative overstatement of Prestige's 'net sales' of nearly $22 million through the first quarter of fiscal 2006." Compl. ¶ 29.  Plaintiffs allege that this announcement constituted an admission that the financial statements included in the prospectus were materially false and misleading.  This announcement allegedly caused Prestige's stock price to decline an additional 15%.

Plaintiffs argue that their motion to certify the class should be granted, "[b]ecause the benefits of the underlying litigation apply equally to the Class as a whole and... because this securities action satisfies all applicable requirements under Rule 23 of the Federal Rules of Civil Procedure."  Pl. Br. 2.  Defendants filed joint opposition to the motion.  While Defendants concede that  "Plaintiffs have advanced a credible argument for the certification of a class of some variety", they argue that the motion for certification should be denied because the proposed class is overly broad. Def. Br. 1.   Specifically, they argue that if any class is certified, the proposed class should be limited to take into account the following: 1) the Proposed Class fails to exclude those who did not purchase "directly" in the IPO; 2) it fails to satisfy the Section 11 requirement that stocks be individually traceable to the IPO; and 3) it fails to exclude those plaintiffs who sold their stock before alleged curative disclosures were made, and who therefore not harmed by alleged fraudulent statements that inflated the stock price.

*Discussion*

**Rule 23(a)**

In order for this Court to grant Plaintiffs' motion for class certification, it must first

determine that the class representatives satisfy "the four prerequisites for every class action:

numerosity, commonality, typicality, and adequacy of representation."  *In re Initial Public*

*Offering Securities Litigation*, 471 F.3d 24, 32 (2d Cir. 2006).  These four prerequisites are

contained in Rule 23(a) of the Federal Rules of Civil Procedure, which provides that:

> One or more members of a class may sue or be sued as representative parties on behalf
> of all only if (1) the class is so numerous that joinder of all members is impracticable,
> (2) there are questions of law or fact common to the class, (3) the claims or defenses
> of the representative parties are typical of the claims or defenses of the class, and
> (4) the representative parties will fairly and adequately protect the interests of the class.
> Fed. R. Civ. P. 23(a).

Numerosity

Plaintiffs argue, and Defendants do not dispute, that the numerosity requirement of Rule

23 is satisfied in this case.  Plaintiffs allege that there are thousands of members in the class of

persons who purchased the shares of prestige in the IPO.  Compl. ¶ 15.  They point to the fact

that approximately 32.2 million shares of Prestige stock were purchased in the IPO, and they

argue that the purchasers' identities can be easily ascertained by examining the Company's

books and records.  The Court agrees that the class is sufficiently numerous that joinder of all

members is impracticable. Evidence of the exact number of class members is not required, and

our Court of Appeals has held that "numerosity is presumed at a level of 40 members."

*Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995).

Commonality

Rule 23(a)(2) requires that, in order for a class action to be maintained, there must be "questions of law or fact common to the class."  The Court finds that Plaintiffs have satisfied the commonality requirement.  Our Court of Appeals has held that the Rule 23 commonality requirement is "plainly satisfied [where] the alleged misrepresentations in the prospectus relate to all the investors, and the existence and materiality of such misrepresentations obviously present important common issues."  *Korn v. Franchard Corp*. 456 F.2d 1206, 1210 (2d Cir. 1972).   In this case, the central issue of whether the Prospectus and Registration statement omitted or misrepresented material facts is common to the claims of all members of the proposed class. Again, Defendants did not contest this issue.

Typicality

Plaintiffs argue that they have satisfied the "typicality" requirement, because "[t]he Proposed Class Representatives have claims not only similar to, but virtually identical to, those of the members of the class."  Pl. Br. 16.  "A named plaintiff's claims are 'typical' pursuant to Rule 23(a)(3) where each class member's claims arise from the same course of events and each class member makes similar legal arguments to prove the defendants' liability." *In re Initial Public Offering Securities Litigation*, 227 F.R.D. 65, 87 (S.D.N.Y. 2004)("IPO I") *(reversed on other grounds by In re Initial Public Offering Securities Litigation*, 471 F.3d 24 (2d Cir. 2006) ("IPO II")) (citing *Robinson v. Metro-North Commuter R.R. Co.,* 267 F.3d 147, 155 (2d Cir.2001).  As other courts have held, "[t]he typicality requirement 'is not demanding.'" *IPO I at* 87 *(quoting Forbush v. J.C. Penney Co.,* 994 F.2d 1101, 1106 (5th Cir.1993)).  The Court holds that the typicality requirement is satisfied, because claims asserted by the proposed class

representatives are based upon the same allegedly false and misleading Prospectus and

Registration statements that form the basis of the claims of all class members.

Adequacy of Representation

Our Court of Appeals has held that, "[g]enerally, adequacy of representation entails

inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of

the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation."

*Baffa v. Donaldson, Lufkin & Jenrette Securities Corp*., 222 F.3d 52, 60 (2d Cir. 2000).

Plaintiffs argue that "the Proposed Class Representatives already have successfully represented

the interests of the proposed Class and demonstrated their adequacy to prosecute the case.

Moreover, none of the Proposed Class Representatives' interests are antagonistic to those of the

Class."  Pl. Br. 17.  Furthermore, Plaintiffs argue that their counsel is "qualified, experienced and

able", citing the successful track record of the law firm Lerach, Coughlin, Geller, Rudman and

Robbins and its predecessor firms.

Defendants argue that Plaintiffs have not met the requirement of 23(a)(4), claiming that

"[t]he proposed class representatives' ability to represent the class is suspect in this case."  Def.

Br. 10.  Defendants point to deposition testimony supposedly indicating that the proposed class

representatives lacked knowledge of important facts of the case, and did not exercise control

over the litigation.  Defendants argue that "[l]imited personal knowledge of the facts underlying

this lawsuit, coupled with their completely passive role in connection with the conduct of the

litigation, indicates that the proposed class representatives are inadequate." Def. Br. 11.

The Court finds that Plaintiffs have demonstrated the adequacy of their representation, and of the ability and qualifications of their counsel. As Plaintiffs point out, "Defendants do not dispute that Plaintiffs' interests are aligned with those of the absent members of the Class or that they have selected able class counsel." Pl. Rep. Br. 8.  Rather, Defendants attack the adequacy of representation by characterizing it as "suspect", because the proposed class representatives "have no knowledge of the case and are wholly dependent on their counsel."  Def. Br. 11, n. 6.

Defendants' contention that the proposed class representatives have "no knowledge of the case" is simply not supported by the record. The proposed representatives showed that they knew the nature of the allegations contained in the complaint and conferred regularly with counsel on the case. Our Court of Appeals has held that general knowledge can satisfy the "adequacy of representation" requirement of Rule 23:

> Also relevant to the question of [Plaintiff]'s adequacy as class representative is whether he has the knowledge to be able to protect the interests of the class. The record shows that he understood that the Rickel investments were the subject of this litigation; he understood that he and others had sustained a loss due to the alleged fraud; and he understood that he could continue to rely on the expert for advice in accounting matters. The acknowledgment of advice and support from both his father and his attorneys cannot support a conclusion that [Plaintiff] is unable to pursue the litigation on behalf of the class. Far from showing [Plaintiff]'s ignorance of the litigation or his inability to serve as class representative, it demonstrates [Plaintiff]'s ability to appreciate the limits of his knowledge and rely on those with the relevant expertise.

> *Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.*, 222 F.3d 52, 62 (2d Cir. 2000).

Plaintiffs here have shown that their knowledge of the litigation is at least as strong as that of the plaintiff in *Baffa*.

7

Accordingly, the Court holds that Plaintiffs have satisfied the requirements of Rule 23(a).

**Rule 23(b)(3)**

Plaintiffs assert that they have also satisfied the two additional requirements of Rule 23(b)(3).  A Rule 23(b)(3) class action cannot be maintained unless "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Fed. R. Civ. P. 23(b)(3)*. Our Court of Appeals has described these two requirements as ""*predominance*, *i.e.,* law or fact questions common to the class predominate over questions affecting individual members, and *superiority*, *i.e.,* class action is superior to other methods." *IPO II*, 471 F.3d 24, 32 (2d Cir. 2006) (emphasis added.).

Defendants argue that Plaintiffs have failed to satisfy Rule 23(b)(3) because individual issues will predominate.  First, Defendants argue that the Proposed Class does not exclude those who did not purchase shares directly in the IPO, and who therefore lack standing to bring a claim under Section 12(a)(2).  Second, Defendants argue that the proposed class must be modified to reflect the fact that some non-IPO shares may have entered the market before the end of the putative class period.  Defendants argue that this prevents some shareholders from tracing their stocks to the IPO, which is a requirement of a Section 11 claim.  Third, Defendants argue that shareholders who sold before the two alleged curative statements made in July and November of 2005 should be excluded from the Class.  They argue that such shareholders cannot claim that

they were harmed by alleged misrepresentations and omissions in the prospectus if they sold while the trading price was still "inflated".  The Court will address these arguments in turn below.

*Section 12(a)(2)*

Defendants argue that the proposed Section 12(a)(2) class should be limited to those who purchased prestige shares directly in the IPO, as opposed to those who merely purchased the shares "traceable to" or "in connection with" the IPO.  Furthermore, they argue that Plaintiff Charter did not purchase Prestige shares in the IPO, and therefore that Charter cannot represent the 12(a)(2) class.  Plaintiffs conceded at oral argument that Section 12(a)(2) only applies to shares bought directly in the IPO.  Plaintiffs argue that no "subclass" is required however, because the same course of conduct will give rise to liability under both Section 11 and Section 12(a)(2).  This Court agrees.

*Tracing Shares under Section 11*

Defendants argue that Plaintiffs have not satisfied the predominance requirement of Rule 23(b)(3), because they argue that each class member will have to individually prove that his or her shares were issued pursuant to the IPO registration statement.  This argument is based on the fact that "the IPO prospectus indicates that over 21 million shares were eligible for trading as of August 8, 2005 when the lock-up agreements expired (180 days after the IPO)".  Def. Mem. 7.  Therefore, Defendants argue, "non-IPO shares may have entered the market before the end of the putative class period."  *Id*.  The Court disagrees, and holds that the expiration of the lock-up

agreement does not require that the class period be closed prior to that date.  While it is true that

a claim under Section 11 requires that the purchased stock is "traceable" to the allegedly

defective registration statement, Defendants have offered no evidence that the expiration of the

lock-up will prevent Plaintiffs from establishing this.  No evidence has so far been presented that

non-IPO shares entered the market in any significant number during the class period.


The cases cited by Defendants do not support a different conclusion.  In *Krim v.*

*pcOrder.com, Inc*. the court held that one plaintiff did not have standing because "some company

insiders had sold their shares and those shares constituted a portion of [plaintiff's] stock

certificate."  210 F.R.D. 581, 586 (W.D. Tex. 2002). In contrast, there is no evidence in this case

that any insiders had sold their shares during the class period.  Similarly, in *IPO I*, Defendants

"implied" that "some unregistered shares might have been tradeable at the time of the IPOs" in

some cases. 227 F.R.D. 65, 120 (S.D.N.Y. 2004)1.  However, the court rejected such arguments

because, as is true in this case, "[n]o such inference is supported by the facts." *Id.*  This is, in any

event, an issue specific to each purported class member, which clearly does not predominate

over the class wide issues.


*Sales Preceding Corrective Disclosures*

Defendants also argue that the proposed class must exclude those who sold their stocks

before the alleged "curative disclosures" of July 27, 2005, and November 15, 2005.  Defendants

argue that such Plaintiffs fail to establish proximate cause of any damage because they sold their

shares while Prestige's stock price was "artificially high" due to Defendants' alleged

misrepresentations and omissions.  In particular, Defendants argue that Charter must be excluded

from the Class, because it sold its stock on July 28, 2005.  *Def. Mem*. 5.

Defendants can raise later the affirmative defense of "loss causation", and there is no

reason for the Court to adjudicate the issue at this stage of the proceedings. See *In re Oxford

Health Plans, Inc.*, 191 F.R.D. 369 (S.D.N.Y. 2000) ("While damages may vary among class

members, all share common questions of liability. Damage amounts can be calculated for each

individual class member after a determination of liability.")  Plaintiffs concede, an investor must

allege that she was actually damaged in order to state a claim, and the class certification order

must reflect that claim element.

Defendants specifically argue that plaintiff Charter cannot represent a class bringing

claims under Section 11, because Charter sold Prestige stock on July 28, 2005.  This is puzzling

to the Court, because Plaintiffs clearly allege that the curative disclosure of July 27, 2005 caused

Prestige's stock price to decline 40%.  This would surely indicate damage suffered by Charter,

who sold the next day.  If Defendants mean to argue that Charter cannot serve as class

representative because its claims are not identical to those who sold after the November 15, 2005

curative disclosure, they are adding a requirement that is not contained in Rule 23, and this

argument is rejected.

## Conclusion

The motion is granted.  An order to that effect has been signed.  Counsel shall comply

therewith with respect to providing for notice to the class.  A status conference of Counsel with

with the Court shall be held on October 5, 2007 at 10:00 A.M.

X

X

X

X

X

SO ORDERED.

Dated: White Plains, New York
         September 4, 2007

Charles Brieant

Charles L. Brieant, U.S.D.J.

13